**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| FRANCISCA SEVALLOS BALLESTEROS, | ) ) | No.  ED CV 08-798-PLA |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 20, 2008, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income.  The parties filed Consents to proceed before the undersigned Magistrate Judge on July 8, 2008, and October 23, 2008.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 5, 2009, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on February 4, 1968. [Administrative Record ("AR") at 74, 82.] She has a ninth grade education, and has past relevant work experience as, among other things, an assembly worker and utility worker. [AR at 104-11, 145-46, 148.]

On January 12, 2005, plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since October 20, 2003, due to severe fatigue, Human Immunodeficiency Virus ("HIV"), depression, and fungal infection. [AR at 37, 45, 74-76, 132-35, 144-45, 641-44.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 21-22, 33-49.] A hearing was held on August 8, 2007, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 647-82.] A vocational expert and a medical expert also testified. [AR at 664-71, 676-82.] On November 5, 2007, the ALJ determined that plaintiff was not disabled. [AR at 10-19.] Plaintiff requested review of the hearing decision. [AR at 8-9.] When the Appeals Council denied plaintiff's request for review on May 28, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 5-7.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

1  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
2  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform
3  past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie
4  case of disability is established.  The Commissioner then bears the burden of establishing that the
5  claimant is not disabled, because she can perform other substantial gainful work available in the
6  national economy.   The determination of this issue comprises the fifth and final step in the
7  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d
8  at 1257.

9

10  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

11        In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial
12  gainful activity since the alleged onset date of the disability.[1]  [AR at 15.]  At step two, the ALJ
13  concluded that plaintiff has the "severe" impairment of "a mood disorder."  [AR at 15.]  At step
14  three, the ALJ determined that plaintiff's impairment does not meet or equal any of the
15  impairments in the Listing.  [AR at 15-16.]  The ALJ also found that plaintiff retained the residual
16  functional capacity ("RFC")[2] to perform light work[3] with the following limitations: she can lift no
17  more than 20 pounds on an occasional basis and 10 pounds on a frequent basis; she can stand
18  and/or walk for two hours out of eight and sit for six hours out of eight; she is precluded from work
19  requiring more than occasional climbing, kneeling, stooping, crouching or crawling; she should not
20  work near dangerous equipment or unprotected heights; and she is precluded from work requiring
21  balancing or the use of ladders.  [AR at 16-17.]  The ALJ further found that plaintiff "is fully capable

22

23    [1]    The ALJ also determined that plaintiff "meets the insured status requirements of the
24  Social Security Act through December 31, 2008."  [AR at 15.]

25    [2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
   Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26    [3]    Light work is defined as work involving "lifting no more than 20 pounds at a time with
27  frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of
   walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg
28  controls."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

1  of performing simple repetitive work tasks on a sustained basis consistent with a broad range of

2  unskilled work." [AR at 17.]  At step four, the ALJ concluded that plaintiff is capable of performing

3  her past relevant work as a sprinkler assembler.[4]  [AR at 19.]  Accordingly, the ALJ found plaintiff

4  not disabled.  [Id.]

5

6                                                    V.

7                                    **THE ALJ'S DECISION**

8          Plaintiff contends that the ALJ: (1) misrepresented the record and failed to properly consider

9  plaintiff's testimony; (2) failed to properly consider the type, dosage, effectiveness, and side effects

10 of plaintiff's medication; (3) failed to properly consider the treating physician's opinion; (4) failed

11 to pose a complete hypothetical question to the vocational expert; (5) failed to properly consider

12 the mental and physical demands of plaintiff's past relevant work; and (6) failed to properly

13 consider the lay witness statements.  Joint Stipulation ("Joint Stip.") at 2-3.  As set forth below, the

14 Court agrees with plaintiff, in part, and remands the matter for further proceedings.

15 **A.      TREATING PHYSICIAN'S OPINION**

16         Plaintiff contends that the ALJ failed to properly consider the treating physician's opinion.

17 Specifically, plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for

18 rejecting the opinion of plaintiff's treating physician, Dr. Mark Peterson.  Joint Stip. at 12-18.

19         In evaluating medical opinions, the case law and regulations distinguish among the opinions

20 of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

21 examine but do not treat the claimant (examining physicians); and (3) those who neither examine

22 nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also

23 Lester, 81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater

24 weight than those of other physicians, because treating physicians are employed to cure and

25 _____

26     [4]    The ALJ noted the vocational expert's testimony that plaintiff's past relevant work as a
     sprinkler assembler "does not require the performance of work-related activities precluded by
27  [plaintiff's] residual functional capacity."  [AR at 19.]  The ALJ also noted the vocational expert's
     testimony that "sprinkler assembly positions could be performed between the sedentary and light
28  range."  [Id.]

therefore have a greater opportunity to know and observe the claimant.  See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. See Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).

"'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'"  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830.  Where the treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[5] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

In a letter dated October 15, 2007, Dr. Peterson indicated that he first evaluated plaintiff on September 29, 2004, and treated her at Riverside Neighborhood Health Center at approximately two to three month intervals.  [AR at 640.]  He diagnosed plaintiff with major depressive disorder and borderline personality disorder.  [Id.]  Dr. Peterson found that plaintiff's "recurrent depression severely impairs her ability to concentrate and interact socially."  [AR at 640.]  He noted that plaintiff's "prognosis is poor secondary to environmental, social, and biological factors."  [AR at

[5]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

6

640.]  Dr. Peterson stated that "[a]lthough her depression occasionally partially responds to treatment, the response does not persist, and she relapses into depression which severely impairs here [sic] ability to function."  [Id.]

In the decision, the ALJ rejected Dr. Peterson's opinion because it was: (1) inconsistent with plaintiff's daily activities; (2) "unsupported by any specific, objective or clinical findings or mental status examination findings;" (3) only based on treatment every three months; (4) inconsistent with the totality of the medical evidence of record; and (5) an "egregious accommodation" to plaintiff. [AR at 18-19.]  Plaintiff contends that the reasons cited by the ALJ to reject Dr. Peterson's opinion are insufficient.  As discussed below, the Court agrees with plaintiff.

First, the ALJ's conclusion that Dr. Peterson's opinion is inconsistent with plaintiff's statements to the psychiatric consultative examiner concerning her daily activities does not suffice as a specific and legitimate reason for rejecting Dr. Peterson's opinion.  [AR at 18.]  An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings.  See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply selectively choose evidence in the record that supports his conclusions); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).  Here, the ALJ noted that "[r]aising five children alone and maintaining a household including preparing meals, running errands and associated household chores is certainly consistent with the residual functional capacity assessment found [in the decision]."  [AR at 18.]  However, a review of the record indicates that plaintiff's activities of daily living were more limited than suggested by the ALJ in the decision.  Specifically, during the psychiatric consultative examinations, where she described her activities, plaintiff also asserted that she takes naps and often has to rest during the day.  [AR at

189-90, 240-41.]  In addition, in the Daily Activities Questionnaires dated April 15, 2005, and March 1, 2006, plaintiff stated that she gets very tired and weak, takes naps, and needs a lot of help doing household chores.  [AR at 136-43, 150-57.]  She further stated that her children assist her with the housework and yard work.  [AR at 138, 152.]  Moreover, at the hearing on August 8, 2007, plaintiff testified that she has difficulty moving about at a normal pace because of her fatigue and concentration problems, and that her children help her with the household chores.  [AR at 653-57.]  Plaintiff also testified that it has been difficult for her to do her daily activities because her depression over the last several years has been overwhelming.  [AR at 658-59.]  Plaintiff further testified that she isolates herself and does not communicate with her friends or neighbors. [AR at 659-61.] Additionally, in the HIV Questionnaire plaintiff indicated that "pretty much every thing" causes her fatigue.  [AR at 387.]  The ALJ's selective reliance on only some of plaintiff's statements concerning her daily activities is insufficient to reject Dr. Peterson's opinion.

Moreover, there is no indication in the record that plaintiff spent a substantial part of the day engaged in the daily activities referenced by the ALJ in the decision.  Indeed, plaintiff indicates that her daily activities require assistance and periods of rest.  As such, plaintiff's statements concerning her daily activities, taken as a whole, do not necessarily equate with an ability to sustain gainful employment, and thus are not inconsistent with Dr. Peterson's opinion.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . , and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") (citations omitted); see also Reddick, 157 F.3d at 722 (". . . disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (ordering award of benefits for constant back and leg pain despite claimant's ability to cook meals and wash dishes); Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (evidence of a plaintiff's limited ability to perform some physical activities is inadequate to support a conclusion of ability to engage in substantial gainful activity).

1    Next, the ALJ's assertion that the opinion of Dr. Peterson is not supported by any objective

2    evidence is insufficient to constitute a specific and legitimate reason for rejecting Dr. Peterson's

3    opinion (AR at 18), as it does not reach the level of specificity required in order to reject the

4    opinion of a treating physician.  See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To

5    say that medical opinions are not supported by sufficient objective findings or are contrary to the

6    preponderant conclusions mandated by the objective findings does not achieve the level of

7    specificity our prior cases have required, even when the objective factors are listed seriatim.  The

8    ALJ must do more than offer his conclusions.  He must set forth his own interpretations and

9    explain why they, rather than the [treating] doctors', are correct.") (footnote omitted); see also

10   McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating

11   physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad

12   and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

13   Further, although the record is not replete with abnormal psychiatric findings, the records from

14   Riverside Neighborhood Health Center (with which Dr. Peterson is associated)[6] show that plaintiff

15   had suicidal ideations, cried easily, suffered from fatigue, had limited judgment, and appeared sad

16   and quiet.  [AR at 467, 548, 557, 622.]  The records also show that plaintiff was prescribed

17   psychotropic medications over the course of her treatment for depression, including Celexa, Paxil,

18   Effexor, and Remeron.[7]  [See, e.g., AR at 285-86, 507, 521, 541, 556, 558.]  These findings

19   substantiate Dr. Peterson's diagnosis and prognosis in the letter dated October 15, 2007.  See

20

21        [6]   In the October 15, 2007, letter, Dr. Peterson indicated that he treated plaintiff at

22   Riverside Neighborhood Health Center. [AR at 640.] In the records from Riverside Neighborhood
     Health Center, there are references to psychiatry referrals and follow up appointments with

23   psychiatry, as well as a recommendation that plaintiff discuss her symptoms with Dr. Peterson.
     [AR at 483, 488, 494, 499, 503, 507, 517, 519, 521, 541, 548.]

24

25        [7]   Celexa, Paxil, Effexor, and Remeron are anti-depressants used to treat depression.
     http://my.webmd.com/drugs/index-drugs.aspx (search "Find A Drug," by "Drug Name"; then enter

26   the name of the drug; then select the appropriate hyperlink if there are multiple forms of the drug;
     then follow "Uses" tab).  The physicians who treated plaintiff at Riverside Neighborhood Health

27   Center assessed plaintiff with depression on numerous occasions, and adjusted plaintiff's
     psychotropic medications and dosages. [AR at 483, 488, 494, 499, 503, 507, 517, 519, 521, 541,

28   548, 556, 558.]

1   Sprague, 812 F.2d at 1232 (when the treating physician diagnosed the claimant with depression,

2   set forth clinical observations supporting the diagnosis, and prescribed psychotherapeutic drugs,

3   the ALJ erred in finding that the claimant had not set forth sufficient evidence to substantiate the

4   mental impairment).

5        In addition, the ALJ's assertion that Dr. Peterson only treats plaintiff every three months as

6   a reason to reject his opinion is inadequate.  The regulations define "treating source" as the

7   claimant's physician, psychologist, or other acceptable medical source who has provided the

8   claimant with medical treatment or evaluation and who has had an ongoing treatment relationship

9   with the claimant.  See 20 C.F.R. §§ 404.1502, 416.902.  An ongoing treatment relationship with

10  an acceptable medical source exists when the medical evidence establishes that the claimant has

11  seen the source "with a frequency consistent with accepted medical practice for the type of

12  treatment and/or evaluation required for [the claimant's] medical condition(s)."  Id.  The Social

13  Security Administration "may consider an acceptable medical source who has treated or evaluated

14  [the claimant] only a few times or only after long intervals (e.g., twice a year) to be [the claimant's]

15  treating source if the nature and frequency of the treatment or evaluation is typical for [the

16  claimant's] condition(s)."  Id.  Here, Dr. Peterson asserted that he "treated [plaintiff] at Riverside

17  Neighborhood Health Center at approximately two to three month[] intervals" since September 29,

18  2004.  [AR at 640.]  It follows that Dr. Peterson saw plaintiff a number of times and long enough

19  to obtain a longitudinal picture of plaintiff's impairment.  See 20 C.F.R. §§ 404.1527(d)(2)(i),

20  416.927(d)(2)(i).  Given Dr. Peterson's treatment relationship, his opinion was entitled to more

21  weight than the opinion of a nontreating source.  See discussion infra.

22       Furthermore, the ALJ's rejection of Dr. Peterson's opinion as inconsistent with the totality

23  of the medical evidence based on the opinions of the consultative and nonexamining State Agency

24  physicians, without more, is insufficient.  The ALJ may only give less weight to a treating

25  physician's opinion that conflicts with that of another physician if the ALJ provides sufficient

26  specific and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31 (the

27  opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for

28  specific and legitimate reasons that are supported by substantial evidence in the record); see also

1  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("[e]ven when contradicted by an opinion of an
2  examining physician that constitutes substantial evidence, the treating physician's opinion is 'still
3  entitled to deference.'") (citations omitted); SSR 96-2p (a finding that a treating physician's opinion
4  is not entitled to controlling weight does not mean that the opinion is rejected).  Here, as discussed
5  above, the ALJ did not provide legally sufficient reasons for his rejection of Dr. Peterson's opinion.
6  Generally, more weight is given to the opinions of treating physicians because they "are likely to
7  be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's]
8  medical impairment(s) and may bring a unique perspective to the medical evidence that cannot
9  be obtained from the objective medical findings alone or from reports of individual examinations,
10 such as consultative examinations or brief hospitalizations."  See 20 C.F.R. §§ 404.1527(d)(2),
11 416.927(d)(2).   Dr. Peterson treated plaintiff on a regular basis for an extended period as
12 evidenced by the October 15, 2007, letter.  [AR at 640.]  See 20 C.F.R. §§ 404.1527(d)(2)(i), (ii),
13 416.927(d)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on length of the
14 treatment relationship, frequency of visits, and nature and extent of treatment received).  Based
15 on the length of the treatment relationship and Dr. Peterson's experience with plaintiff, Dr.
16 Peterson had the broadest range of knowledge regarding plaintiff's medical condition.  See Smolen,
17 80 F.3d at 1279; see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship
18 with the claimant makes him especially qualified . . . to form an overall conclusion as to functional
19 capacities and limitations, as well as prescribe or approve the overall course of treatment.").

20      Finally, the ALJ's statement that Dr. Peterson's assessment "appears to be no more than
21 an egregious accommodation" to plaintiff is unsupported, as the ALJ points to no evidence of any
22 actual impropriety on the part of Dr. Peterson.  [AR at 19.]  See Lester, 81 F.3d at 832 ("The
23 Secretary may not assume that doctors routinely lie in order to help their patients collect disability
24 benefits.") (quoting Ratto v. Secretary, Dept. of Health and Human Services, 839 F.Supp. 1415,
25 1426 (D. Or. 1993)); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (the source
26 of report is a factor that justifies rejection only if there is evidence of actual impropriety or no
27 medical basis for opinion) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996), cert. denied,
28 519 U.S. 1113 (1997)).  The record contains no evidence that Dr. Peterson embellished his

1   assessment of plaintiff's limitations in order to assist her with her benefits claim. <u>See</u> <u>Reddick</u>, 157

2   F.3d at 725-26 (holding that the ALJ erred in assuming that the treating physician's opinion was

3   less credible because his job was to be supportive of the patient). In addition, to the extent that

4   the ALJ's assertion of "egregious accommodation" is based on the fact that Dr. Peterson's letter

5   dated October 15, 2007, was procured by plaintiff for the purpose of her disability claim,[8] such an

6   assertion also does not provide a sufficient basis for rejecting Dr. Peterson's opinion, as "[t]he

7   purpose for which medical reports are obtained does not provide a legitimate basis for rejecting

8   them." <u>See</u> <u>Lester</u>, 81 F.3d at 832. Moreover, at the hearing on August 8, 2007, the ALJ

9   requested that plaintiff provide a narrative report from Dr. Peterson. [AR at 640, 674.] Thus, the

10  ALJ's statement does not support his rejection of Dr. Peterson's opinion.

11        The ALJ's failure to provide legally sufficient reasons that are supported by substantial

12  evidence for rejecting Dr. Peterson's opinion warrants remand. <u>See</u> <u>Embrey</u>, 849 F.2d at 422 (in

13  disregarding the findings of a treating physician, the ALJ must "provide detailed, reasoned and

14  legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical

15  opinions and findings he rejects"); <u>see</u>, <u>e.g.</u>, <u>Nelson v. Barnhart</u>, 2003 WL 297738, at *4 (N.D. Cal.

16  Feb. 4, 2003) ("Where an ALJ fails to 'give sufficiently specific reasons for rejecting the conclusion

17  of [a physician],' it is proper to remand the matter for 'proper consideration of the physicians'

18  evidence.'") (brackets in original) (citation omitted).

19  /

20  /

21  **B.**    **SIDE EFFECTS OF MEDICATIONS/PLAINTIFF'S TESTIMONY**

22        Plaintiff further contends that the ALJ misrepresented the record and failed to properly

23  consider plaintiff's testimony concerning the side effects of her medications.[9] Joint Stip. at 3-5,

24  9-11.

25

26     [8]   Dr. Peterson's letter dated October 15, 2007, is directed to plaintiff's attorney. [AR at 187.]

27

28     [9]   The first two issues raised by plaintiff in the Joint Stipulation concern the side effects of plaintiff's medications, and thus the Court's consideration of these issues are combined herein.

The regulations specifically require consideration of the "type, dosage, effectiveness, and side effects of any medication" taken by a claimant to alleviate her pain or other symptoms.  See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); see also SSR 96-7p (side effects of medications are a factor to be considered in assessing a claimant's credibility); SSR 96-8p (side effects of medications are a factor to be considered in the formulation of a claimant's residual functional capacity); Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993) ("[t]he ALJ must consider *all factors* that have a 'significant impact on an individual's ability to work,'" including the side effects of medication) (citation omitted) (emphasis in original).  "When a [claimant] testifies about experiencing a known side effect associated with a particular medication, the ALJ may disregard the testimony only if he 'support[s] that decision with specific findings similar to those required for excess pain testimony.'"  Lewis v. Astrue, 2009 WL 890724, *10 (C.D. Cal. Mar. 31, 2009) (citation omitted) (brackets in original).  The claimant bears the burden of proving that the claimed side effects of her medications are severe enough to impair her ability to work.  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

Here, plaintiff repeatedly reported fatigue as a side effect of her medications.  Specifically, plaintiff testified during the hearing on August 8, 2007, that her HIV and depression medications cause fatigue and drowsiness, and thus "all [s]he want[s] to do is sleep."  [AR at 655, 660.] Further, in the disability report dated January 26, 2004, plaintiff listed the side effects of her medications as headaches, dizziness, and drowsiness.  [AR at 98-100.]  In the disability report dated May 3, 2005, plaintiff noted the side effects of her medications as weakness and tiredness. [AR at 148.]  Also, in the HIV Questionnaire completed by plaintiff, she indicated that her medications cause sleepiness.  [AR at 389.]  In the decision, the ALJ did not consider plaintiff's testimony concerning the side effects of her medications.  In fact, the ALJ found that plaintiff "asserted absolutely no adverse side effects from the use of antidepressant medication or any adverse side effects from any HIV medication."  [AR at 18.]  This statement misrepresents plaintiff's testimony concerning the side effects of her medications, and thus requires remand.  See Gallant, 753 F.2d at 1456 (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion).  Based on plaintiff's statements and in light of the Court's

13

1  conclusion that the ALJ failed to properly consider the opinion of Dr. Peterson, the ALJ is
2  instructed on remand to consider the side effects of plaintiff's medications.

3                                                    **VI.**

4                          <u>**REMAND FOR FURTHER PROCEEDINGS**</u>

5          As a general rule, remand is warranted where additional administrative proceedings could
6  remedy defects in the Commissioner's decision. <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th
7  Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 1038 (2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984).
8  In this case, remand is appropriate to properly consider: (1) the opinion of Dr. Peterson; and (2)
9  plaintiff's testimony concerning the side effects of her medications.[10] The ALJ is instructed to take
10  whatever further action is deemed appropriate and consistent with this decision.

11          Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;
12  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant
13  /
14  /
15  /

16
17
18
19
20
21
22
23

24      [10]      As the ALJ's consideration on remand of the treating physician's opinion and the side
25  effects of plaintiff's medications may impact the remaining issues raised by plaintiff in the Joint
    Stipulation, the Court will exercise its discretion not to address those issues at this time.  Rather,
26  upon remand, the ALJ should also (1) ensure that the hypothetical question presented to the
    vocational expert accurately reflects the extent of plaintiff's limitations, (2) re-examine the mental and
27  physical demands of plaintiff's past relevant work in compliance with the requirements of SSR 82-62
    or find that plaintiff cannot perform her past work and proceed to step five in the sequential evaluation
28  process, and (3) consider the lay witness statements.

1  for further proceedings consistent with this Memorandum Opinion.

2       **This Memorandum Opinion and Order is not intended for publication, nor is it**

3  **intended to be included or submitted to any online service such as Westlaw or Lexis.**

4

5

6  DATED: June 3, 2009

                            _____

7                                     PAUL L. ABRAMS
                          UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28